1  THOMAS E. MONTGOMERY, County Counsel
County of San Diego
2  By LAURA E. DOLAN, Senior Deputy (State Bar No. 302859)
1600 Pacific Highway, Room 355
3  San Diego, California 92101-2469
Telephone: (619) 531-5801
4  Fax: (619) 531-6005
E-mail: laura.dolan@sdcounty.ca.gov
5  *Exempt from filing fees per Gov. Code § 6103*

6  Attorneys for Defendant County of San Diego, David Jennings, and Dennis Leggett

7

8              **UNITED STATES DISTRICT COURT**

9              **SOUTHERN DISTRICT OF CALIFORNIA**

10

11  GAVIN JONES, an individual; W.J., a           ) Case No. 18-cv-2729-W-LL
minor by and through his guardian ad          )
12  litem; and E.J., a minor by and through his  ) **MEMORANDUM OF POINTS AND**
guardian ad litem,                            ) **AUTHORITIES IN SUPPORT OF**
13                                              ) **DEFENDANTS COUNTY OF SAN**
Plaintiffs,                      ) **DIEGO, DAVID JENNINGS, AND**
14                                              ) **DENNIS LEGGETT'S MOTION TO**
v.                           ) **DISMISS PURSUANT TO FRCP 12(b)(6)**
15                                              ) **and 12(b)(1)**
COUNTY OF SAN DIEGO, a public                 )
16  entity; DAVID JENNINGS, an individual;       ) Date: January 28, 2019
DENNIS LEGGETT, an individual;                ) Courtroom: 3C (Schwartz)
17  CHRISTINA JONES, an individual, and          ) Honorable Thomas J. Whelan
DOES 1-100, inclusive,                        )
18                                              ) **[NO ORAL ARGUMENT PER LOCAL**
Defendants.                      ) **RULE 7.1.D.1]**
19  _____ )

20

21

22

23

24

25

26

27

28

# TOPICAL INDEX

**Page**

TABLE OF AUTHORITIES ........................................................................... ii

I   INTRODUCTION ................................................................................. 1

II   SUMMARY OF FACTUAL ALLEGATIONS & LEGAL
     PROCEEDINGS ............................................................................... 1

III   LEGAL STANDARD ......................................................................... 4

IV   ANY CLAIM BASED ON THE FAMILY COURT'S TEMPORARY
     CUSTODY ORDER FAILS AND IS BARRED BY *ROOKER-FELDMAN*
     DOCTRINE AND THE DOMESTIC RELATIONS EXCEPTION .................... 5

V   DEFENDANTS DAVID JENNINGS AND DENNIS LEGGETT
    ARE ENTITLED TO QUALIFIED IUMMUNITY FOR
    PLAINTIFFS' FIRST CAUSE OF ACTION ....................................... 6

   A.   Plaintiffs' Fourth Amendment Claim .................................. 7

      1.   The Safety Plan Did Not Constitute An Unreasonable
             Seizure Under The Fourth Amendment ............................ 7

   B.   Plaintiffs' Fourteenth Amendment Claim .......................... 11

      1.   Minor Plaintiffs' Fourteenth Amendment Claims Are
             Duplicative Of Their Fourth Amendment Claims And
             Should Be Dismissed .................................................. 11

      2.   Plaintiffs Fail to State a Fourteenth Amendment Claim ........ 11

   C.   Plaintffs' Claims Under The First Amendment Fail Because
       Plaintiffs Cannot Establish A Claim Under The Fourteenth
       Amendment ............................................................... 13

   D.   Defendants David Jennings And Dennis Leggett Are Entitled
       To Qualified Immunity Because It Was Not Clearly Established
       That Their Conduct Violated The Fourth, Fourteenth, Or First
       Amendment ............................................................... 14

VI   PLAINTIFFS FAIL TO STATE A CLAIM FOR SUPERVISOR
     LIABILITY AGAINST DEFENDANT DENNIS LEGGETT ........................ 15

VII   PLAINTIFFS CANNOT ESTABLISH *MONELL* LIABILITY
      AGAINST THE COUNTY OF SAN DIEGO ...................................... 16

   A.   The First Amended Complaint Fails To Allege Any Individual
       Defendants Violated Plaintiffs' Constitutional Rights ............. 16

i

B.    Plaintiffs' Conclusory Allegations As To County Policy, Custom, And Practice Have No Factual Support ........................................ 16

C.    Plaintiffs Fail To Show That A County Policy Was The Moving Force Behind The Purported Violations ...................................... 17

D.    Plaintiffs Cannot Establish A Failure To Train Claim .............................. 18

VIII.  CONCLUSION ............................................................................................. 19

ii

18cv2729-W-LL

# TABLE OF AUTHORITIES

**PAGE**

## CASES

*Albright v. Oliver*, 510 U.S. 266 (1994) ................................................. 6, 11

*Anderson v. Creighton*, 483 U.S. 635 (1987) ....................................... 7

*Ankenbrant v. Richards*, 504 U.S. 689, 703 (1992).............................. 5

*Ashcroft v. al-Kidd*, 563 U.S. 731 (2011) ........................................... *passim*

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) .............................. 3-4, 4, 15

*Atwood v. Fort Peck Tribal Court Assiniboine & Sioux Tribes*, 513 F.3d 943 (9th Cir. 2008) ............................................................................ 5

*Barren v. Harrington*, 152 F.3d 1193 (9th Cir. 1998) ...................... 14

*Bd. of the County Comm'rs v. Brown*, 520 U.S. 397 (1997) ............ 17

*Bd. of the Cty. Comm'rs v. Brown*, 520 U.S. 397 (1997) ........... 11, 16

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007) ........... 4, 16, 17, 18

*Branson v. Nott*, 62 F.3d 287 (9th Cir. 1995) .................................. 5

*Brittain v. Hansen*, 451 F.3d 982 (9th Cir. 2006) ......................... 13

*Cal. v. Hodari D.*, 499 U.S. 621 (1991) ....................................... 8

*Cholla Ready Mix, Inc. v. Civish*, 382 F.3d 969 (9th Cir. 2004) ...... 4

*Connick v. Thompson*, 563 U.S. 51 (2011) ................................... 18

*County of Sacramento v. Lewis*, 523 U.S. 833 (1998) .................. 10

*Csibi v. Fustos*, 670 F.2d 134, 136-37 (9th Cir. 1982)................... 5

*Dees v. County of San Diego*, 302 F. Supp. 3d 1168 (S.D. Cal. 2017) ........... 8

*Dees v. County of San Diego*, No.: 14-cv-189-BEN (DHB), 2016 WL 9488706 (S.D. Cal. May 13, 2016) ........................................................ 13-14

*Doe v. Heck*, 327 F.3d 492 (7th Cir. 2003) ................................... 8

*Dougherty v. City of Covina*, 654 F.3d 892 (9th Cir. 2011) ......... 18

*Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280 (2005) ........... 5

*Farmer v. Brennan*, 511 U.S. 825 (1994) ................................... 11

*Fla. v. Bostick*, 501 U.S. 429 (1991) ............................................ 7

iii

*Ganwich v. Knapp*, 319 F.3d 1115 (9th Cir. 2003) ..................................................... 9, 10

*Gibson v. County of Washoe*, 290 F.3d 1175 (9th Cir. 2002) ......................................... 17

*Graham v. Connor*, 490 U.S. 386 (1989) ..................................................................... 7, 9

*Hydrick v. Hunter*, 669 F.3d 937 (9th Cir. 2012) ...................................................... 14, 15

*Ignacio v. Judges of the U.S. Court of Appeals for the Ninth Circuit*, 453 F.3d 1160 (9th Cir. 2006) .................................................................................... 5

*Inman v. Anderson*, 294 F. Supp. 3d 907 (N.D. Cal. 2018) ........................................... 16

*Johnson v. Shasta County*, 83 F. Supp. 3d 918 (E.D. Cal. 2015) .................................. 17

*Jones v. Hunt*, 410 F.3d 1221 (10th Cir. 2005) ............................................................. 8

*Kaur v. City of Lodi*, 263 F. Supp. 3d 947 (E.D. Cal. 2017) .............................. 12-13, 13

*Keates v. Koile*, 883 F.3d 1228 (9th Cir. 2018) ............................................................ 12

*Kirkpatrick v. County of Washoe*, 843 F.3d 784 (9th Cir. 2016) ............................. 4, 7, 9

*Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18 (1981) ................................................. 10-11

*Lee v. City of L.A.*, 250 F.3d 668 (9th Cir. 2001) ................................................... 12, 13

*Leer v. Murphy*, 844 F.2d 628 (9th Cir. 1988) .............................................................. 14

*Long v. City & County of Honolulu* , 511 F.3d 901 (9th Cir. 2007) ............................... 15

*Mabe v. San Bernardino County*, 237 F.3d 1101 (9th Cir. 2001) ................................... 8

*Mattos v. Agarano*, 661 F.3d 433 (9th Cir. 2011) .......................................................... 6

*McManus v. County of San Diego*, 2016 WL 3552007 (S.D. Cal. 2016) ...................... 16

*Monell v. Dep't of Soc. Servs.*, 436 U.S. 658 (1978) ..................................................... 16

*Mueller v. Auker*, 700 F.3d 1180 (9th Cir. 2012) .......................................................... 11

*Nadolski v. Winchester*, CASE NO. 13-CV-2370-LAB-DHB, 2014 WL 3962473 (S.D. Cal. Aug. 6, 2014) ................................................................................................ 5

*Navarro v. Block*, 250 F.3d 729 (9th Cir. 2001) ............................................................ 3

*Noel v. Hall*, 341 F.3d 1148 (9th Cir. 2003) .................................................................. 5

*Pearson v. Callahan*, 555 U.S. 223 (2009) .................................................................... 6

*Peterson v. Babbitt*, 708 F.2d 465, 466 (9th Cir. 1983) ................................................. 5

*Phillips v. County of Orange*, No. 10 Civ. 239 (SHS) (LMS), 2015 U.S. Dist. LEXIS 137662 (S.D.N.Y. Aug. 20, 2015) .................................................................................. 8

*Portman v. County of Santa Clara*, 995 F.2d 898 (9th Cir. 1993) ................................ 10

*Redman v. County of San Diego*, 942 F.2d 1435 (9th Cir. 1991) ............................. 14-15

*Richardson v. Idaho Dep't of Health & Welfare* , No. 2:10-cv-00648-BLW, 2015 WL 7295443 (D. Idaho Nov. 18, 2015) ........................................... 11, 12

*Rosenbaum v. Washoe County*, 663 F.3d 1071 (9th Cir. 2011) ........................... 10, 13

*S.B. v. County of San Diego*, 864 F.3d 1010 (9th Cir. 2017) ......................... 13

*Saucier v. Katz*, 533 U.S. 194 (2001) ................................. 6

*Scott v. Henrich*, 39 F.3d 912 (9th Cir. 1994) ................................. 15

*Skinner v. Ry. Labor Execs.' Ass'n*, 489 U.S. 602 (1989) ................................. 9

*Staege v. U.S. Parole Com.*, 671 F.2d 266 (8th Cir. 1982) ................................. 4

*Tamas v. Dep't of Soc. & Health Servs.* , 630 F.3d 833 (9th Cir. 2010) ................... 11, 13

*Taylor v. List*, 880 F.2d 1040 (9th Cir. 1989) ................................. 14, 15

*Thomas v. San Diego HHS Agency*, 2018 WL 6168276, 2018 U.S. Dist. LEXIS 199768, (S.D. Cal. 2018) ................................. 13

*Trevino v. Gates*, 99 F.3d 911 (9th Cir. 1996) ................................. 16

*United States v. Al Nasser*, 555 F.3d 722 (9th Cir. 2009) ................................. 7

*United States v. Brown*, 563 F.3d 410 (9th Cir. 2009) ................................. 8

*United States v. Mendenhall*, 446 U.S. 544 (1980) ................................. 7

*Wallis v. Spencer*, 202 F.3d 1126 (9th Cir. 1999) ................................. 7, 8, 9

*White v. Pauly*, 137 S. Ct. 548 (2017) ................................. 6

**RULES/STATUTES**

42 United States Code

    Section 1983 ................................. 1, 2, 3, 6

California Penal Code

    Section 278.7 ................................. 8

18cv2729-W-LL

1   Defendants County of San Diego ("County"), David Jennings, and Dennis Leggett

2   (collectively "Defendants") respectfully submit the following Memorandum of Points

3   and Authorities in support of their Motion to Dismiss Plaintiffs' First Amended

4   Complaint ("FAC").

## I.   INTRODUCTION

6   Plaintiff, Gavin Jones ("Jones"), and minor Plaintiffs, W.J. and E.J. ("Minor

7   Plaintiffs"), (collectively "Plaintiffs") commenced this action under 42. U.S.C. section

8   1983.  Plaintiffs allege one cause of action against Jennings and Leggett ("Social

9   Workers") for a warrantless seizure, in violation of their First, Fourth, and Fourteenth

10  Amendment Rights.  Plaintiffs also assert a cause of action against the County for *Monell*

11  liability arising from the alleged warrantless seizure.

12  Plaintiffs' FAC should be dismissed because this Court lacks subject matter

13  jurisdiction over domestic relations issues, including child custody.  In addition, Plaintiffs

14  fail to state a claim against the Social Workers because the Minor Plaintiffs, who

15  remained in the care and custody of their mother at all relevant times, were never seized,

16  and Plaintiffs' failed to establish any interference with their rights to familial association.

17  Plaintiffs' claims also fail as to Leggett specifically, because Plaintiffs fail to state a

18  claim for supervisory liability against Leggett, who had no direct involvement in the

19  events at issue.  Moreover, even if this Court finds that Plaintiffs sufficiently alleged a

20  constitutional violation, Social Workers are entitled to qualified immunity.

21  The FAC should also be dismissed against the County because Plaintiffs cannot

22  establish *Monell* liability in the absence of a constitutional violation.  In addition,

23  Plaintiffs fail to allege the existence of a policy or long-standing custom that was the

24  "moving force" behind the purported constitutional violations.  Plaintiffs likewise fail to

25  allege a "failure to train" claim against the County.

## II.   SUMMARY OF FACTUAL ALLEGATIONS & LEGAL PROCEEDINGS

27  Jones and nominal defendant, Christina Jones ("Christina"), are the parents of the

28  Minor Plaintiffs.  (FAC ¶ 14.)  In December 2016, Jones filed for divorce.  (*Id*. at ¶ 17.)

1

In January 2017, Jones and Christina entered into a custody agreement ("Custody Agreement").  (*Id*. at ¶ 18.)  At that time, W.J. was three-years old and E.J. was two.  (*Id*. at ¶ 19.)  Under the Custody Agreement, Christina had physical custody of the Minor Plaintiffs from noon on Saturdays to ten in the morning on Wednesdays.  (*Id*. at ¶ 18.)  Plaintiff Jones had custody during the remaining part of the week.  (*Id*.; RJN, Ex. A, Custody Agreement.)

On March 18, 2017, Jones returned the Minor Plaintiffs to Christina, in accordance with the Custody Agreement.  (FAC ¶ 19.)  The following day, while changing E.J.'s diaper, Christina's neighbor observed bruising on E.J.'s buttocks.  (*Id*. at ¶ 20.)  Christina confronted Jones about the bruising, and Jones said E.J. may have fallen off of his bicycle while in Jones' care, or in the alternative, that E.J. sustained the injury while in Christina's care.  (*Id*.)  On Monday, March 20, 2017, the Health and Human Services Agency for the County received a report of suspected child abuse as a result of E.J.'s injuries.  (*Id*. at ¶ 22.)

The next day, on Tuesday, March 21, 2017, while the Minor Plaintiffs were still under Christina's care, doctors at Rady Children's Chadwick Center screened E.J. for signs of physical abuse.  (FAC. ¶¶ 18-19, 23, 26.)  The doctors performed the examination in the presence of Christina and defendant Jennings, the investigating social worker.  (*Id*. at ¶ 23.)  After E.J.'s examination, Christina disclosed the following to Jennings and the doctors: "(1) [Christina] changed the [Minor Plaintiffs'] diapers more than once on March 18, 2017, after the child exchange, and did not notice any bruises on [E.J.]; (2) she did not notice any bruising on [E.J.] until Sunday, March 19, 2017; (3) and [Jones'] possible explanation regarding the bruising."  (*Id*. at ¶ 24.)

Jennings then prepared a safety plan ("Safety Plan") in the presence of Christina and Christina's mother.  (FAC ¶¶ 25-26.)  Defendant Leggett, Jennings' supervisor, signed off on the Safety Plan.  (*Id*. at ¶ 26.)  The Safety Plan stated that "(1) [the Minor Plaintiffs] would reside with Christina; (2) Christina would go to family court to obtain [a] temporary custody [order] [from] the court; (3) that [Jones] could only have

supervised contact with the [Minor Plaintiffs]; (4) Christina's mother would supervise the visits; and (5) that the [] plan would remain in place for 30 days." (*Id.* at ¶ 25.) Christina and her mother both signed the Safety Plan. (*Id.* at ¶ 26.)

After preparing the Safety Plan, Jennings called Jones and informed him "that he was prohibited from picking up the children at the regularly schedule time on Wednesday, March 22, 2017." (FAC. ¶ 28.) Jennings also told Jones that the "was not to have any unsupervised contact with the [Minor Plaintiffs.]" (*Id.*) The Minor Plaintiffs were not taken into custody by Jennings. Instead, the Minor Plaintiffs remained in the custody of their mother, Christina. (*Id.* at ¶¶ 28, 30.)

The next day, on March 22, 2017, Jones and Jennings met to discuss the Safety Plan. (FAC. ¶ 32.) Jones was not obligated to sign the Safety Plan because participation by the parents is "voluntary." (RJN, Ex. B, Safety Plan.) As such, Plaintiff Jones refused to sign the plan. (FAC ¶ 32.) Notably, despite his disagreement with the Safety Plan, Jones does not allege that he appeared at the Alpine Albertsons for the scheduled exchange of the Minor Plaintiffs, in accordance with the Custody Agreement. Nor does he allege that he sought to visit with the Minor Plaintiffs and was prohibited from doing so by the Social Workers. (*See Id.* at ¶¶ 28-33.) In fact, the FAC is devoid of any allegations that the Social Workers had any form of contact with the Minor Plaintiffs after March 21, 2017, which is when legal custody transferred to Jones under the Custody Agreement. (*See* generally FAC.)

On or about March 23, 2017, Christina filed an *ex parte* application with the family court for a temporary custody order (RJN, Ex. C, Christina's *ex parte* request), and Jones opposed the application. (RJN, Ex. D, Jones' Opposition.) On March 24, 2017, Christina and Jones appeared before the family court, and the court issued a temporary order that allowed Jones to have supervised visits with the Minor Plaintiffs. (FAC. ¶¶ 33-34; RJN, Ex. E, Order dated April 24, 2017.) Pursuant to the temporary order, a supervised monitor needed to be appointed before Jones could visit Minor Plaintiffs. (FAC. ¶ 36.) Any delay in Plaintiff Jones seeing the Minor Plaintiffs was due to the

3

1   delay in the appointment of a supervised monitor.  (*Id.*)  On April 20, 2018, the family
2   court reinstated the Custody Agreement.  (*Id.* at ¶ 38; RJN, Ex. F, *ex parte* Application
3   and Order dated April 19, 2017.)

## III.   LEGAL STANDARD

5        A Rule 12(b)(6) motion tests the legal sufficiency of a claim.  *See* Fed. R. Civ. P.
6   12(b)(6); *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001).  Rule 8 of the Federal
7   Rules of Civil Procedure requires a "short and plain statement of the claim showing that
8   the pleader is entitled to relief."  *Ashcroft v. Iqbal*, 556 U.S. 662, 677-78 (2009) (internal
9   quotation marks and citation omitted).  "A pleading that offers 'labels and conclusions' or
10  'a formulaic recitation of the elements of a cause of action will not do.'"  *Id.* at 768
11  (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).  "The tenet that a court
12  must accept as true all of the allegations contained in a complaint is inapplicable to legal
13  conclusions."  *Id.*  A complaint must contain enough factual allegations "to raise a right
14  to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  In other words, legal
15  conclusions couched as factual allegations should not be accepted as true, particularly if
16  those conclusions cannot be reasonably drawn from the facts alleged.  *Cholla Ready-Mix*
17  *Inc. v. Civish*, 382 F.3d 969, 973 (9th Cir. 2004); *see also Iqbal*, 556 U.S. at 663 ("[T]he
18  tenet that a court must accept a complaint's allegations as true is inapplicable to
19  threadbare recitals of a cause of action's elements, supported by mere conclusory
20  statements.")

21       In the context of civil right suits specifically, vague or conclusory allegations
22  concerning a government or government official's actions are categorically insufficient to
23  withstand a motion to dismiss under Rule 12(b)(6).  *Ivey v. Bd. Of Regents of Univ. of*
24  *Alaska*, 671 F.2d 266, 268 (9th Cir. 1982).

25  / / /
26  / / /
27  / / /
28  / / /

4

## IV.   ANY CLAIM BASED ON THE FAMILY COURT'S TEMPORARY CUSTODY ORDER FAILS AND IS BARRED BY *ROOKER-FELDMAN* DOCTRINE AND THE DOMESTIC RELATIONS EXCEPTION

The true substance of Plaintiffs' FAC concerns domestic relations disputes involving child custody subject matter over which this Court lacks jurisdiction. *See Csibi v. Fustos*, 670 F.2d 134, 136-37 (9th Cir. 1982). Federal courts have no jurisdiction to resolve domestic relations disputes involving child custody. *Ankenbrant v. Richards*, 504 U.S. 689, 703 (1992); *see also Peterson v. Babbitt*, 708 F.2d 465, 466 ("The strong state interest in domestic relations matters, the superior competence of state courts in settling family disputes because regulation and supervision of domestic relations within their borders is entrusted to the states, and the possibility of incompatible federal and state court decrees in cases of continuing judicial supervision by the state makes federal abstention in these cases appropriate.")

Here, Plaintiffs raise domestic relations issues by challenging Christina's purported violation of the Custody Agreement on March 22, 2017 and the family court's order from March 24, 2017, granting of Christina's *ex parte* request for a temporary custody order. Notably, Plaintiff opposed Christina's *ex parte* application, and the family court could have found Christina in contempt of court for the willful failure to comply with the provisions of the Custody Agreement (RJN, Ex. A, C.)  However, instead, the family court ordered Jones' custody restricted to supervised visits, just as in the Safety Plan. (FAC. ¶¶ 33-36.)

Any Fourth or Fourteenth Amendment claim based on Social Workers' conduct that occurred after the family court issued its order fails because any separation or interference was pursuant to a valid court order.  *Kirkpatrick v. Cty. of Washoe*, 843 F.3d 784, 789 (9th Cir. 2016).

In addition, Plaintiffs' claims are barred by the *Rooker-Feldman* doctrine and the domestic relations exception.  Under the *Rooker-Feldman* doctrine, federal courts do not have subject matter jurisdiction to review final determinations of state courts.  *See*

18-cv-2729-W-LL

1  *Ignacio v. Judges of the United States Court of Appeals for the Ninth Circuit,* 453 F.3d

2  1160, 1165 (9th Cir. 2006) (affirming dismissal under the *Rooker-Feldman* of federal

3  district court challenge to state court determination of domestic action); *see also Branson*

4  *v. Nott*, 62 F.3d 287, 291 (9th Cir.1995) ("As courts of original jurisdiction, federal

5  district courts have no authority to review the final determinations of a state court in

6  judicial proceedings.")  *Rooker-Feldman* applies to "cases brought by state-court losers

7  complaining of injuries caused by state-court judgments rendered before the district court

8  proceedings commenced and inviting district court review and rejection of those

9  judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005).

10  The doctrine precludes federal adjudication of a claim that "amounts to nothing more

11  than an impermissible collateral attack on prior state court decisions." *Branson*, 62 F.3d

12  at 291.  The doctrine also precludes claims that are "inextricably intertwined" with

13  prohibited appeals. *See Noel v. Hall*, 341 F.3d 1148, 1157 (9th Cir. 2003).

14       Any claim based on the family court's temporary custody order would be an

15  attempt to collaterally attack the court's determination.  Therefore, this Court lacks

16  jurisdiction. *See*, *e.g., Nadolski v. Winchester*, 2014 WL 3962473, at *4 (S.D. Cal. 2014)

17  ("It is well-established that when a plaintiff brings a claim to federal court that challenges

18  the outcome of proceedings in family court, such a claim is barred by the [*Rooker-*

19  *Feldman*] doctrine.")

20       Furthermore, as noted by the Ninth Circuit, the "Supreme Court has long

21  recognized that, when the relief sought relates primarily to domestic relations, a doctrine

22  referred to as the domestic relations exception divests federal courts of jurisdiction."

23  *Atwood v. Fort Peck Tribal Court Assiniboine*, 513 F.3d 943, 946-47 (9th Cir. 2008).

24  **V.  DEFENDANTS DAVID JENNINGS AND DENNIS LEGGETT ARE**
    **ENTITLED TO QUALIFIED IMMUNITY FOR PLAINTIFFS' FIRST**
25  **CAUSE OF ACTION**

26

27       "Section 1983 is not itself a source of substantive rights, but merely provides a

28  method for vindicating federal rights elsewhere conferred." *Albright v. Oliver*, 510 U.S.

266, 271 (1994) (internal quotation marks and citation omitted).  In this case, Plaintiffs allege a single cause of action against the Social Workers for a warrantless seizure in violation of their First, Fourth and Fourteenth Amendment rights.  (*See* FAC. ¶¶ 40-42.) The doctrine of qualified immunity protects government officials from liability for civil "damages unless a plaintiff pleads facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was 'clearly established' at the time of the challenged conduct."  *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)); *Pearson v. Callahan*, 555 U.S. 223, 232 (2009); *see also White v. Pauly*, 137 S. Ct. 548, 552 (2017).  Determining whether a right is clearly established "must be undertaken in light of the specific context of the case, not as a broad general proposition."  *Saucier v. Katz*, 533 U.S. 194, 201 (2001).  "The relevant, dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that [their] conduct was unlawful in the situation [they] confronted."  *Id*. at 202.  As such, a right is clearly established when "the unlawfulness [of the defendant's actions is] . . . apparent."  *Anderson v. Creighton*, 483 U.S. 635, 640 (1987).

The purpose underlying qualified immunity is "to strike a balance between the competing need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction, and liability when they perform their duties reasonably."  *Mattos v. Agarano*, 661 F.3d 433, 440 (9th Cir. 2011) (internal quotation marks and citation omitted).

### A.     Plaintiffs' Fourth Amendment Claim

#### 1.     *The Safety Plan Did Not Constitute an Unreasonable Seizure Under the Fourth Amendment*

The Fourth Amendment protects children against unreasonable seizures without a warrant or exigent circumstances.  *Kirkpatrick*, 843 F.3d at 789; *Wallis v. Spencer*, 202 F.3d 1126, 1137 (9th Cir. 1999); U.S. Const. amend. IV. To establish a Fourth Amendment violation, Plaintiffs must allege they were (1) seized and (2) that the seizure

18-cv-2729-W-LL

was unreasonable.  Therefore, a threshold consideration is whether the governmental conduct at issue constitutes a "seizure" within the meaning of the Fourth Amendment.

In general, a seizure of a person occurs when, considering all the circumstances, "a reasonable person would have believed that [they] [were] not free to leave." *United States v. Mendenhall,* 446 U.S. 544, 554 (1980); *Graham v. Connor*, 490 U.S. 386, 395 n.10 (1989) ("A 'seizure,' triggering the Fourth Amendment's protections occurs only when government actors have, 'by means of physical force or show of authority . . . in some way restrained the liberty of a citizen.'")  (quoting *Terry v. Ohio*, 392 U.S. 1, 19 n.16 (1968))).  A seizure normally occurs when there is "an *intentional* acquisition of physical custody."  *United States v. Al Nasser*, 555 F.3d 722, 728 (9th Cir. 2009) (emphasis in original) (internal quotation marks and citation omitted); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure' readily bears the meaning of a laying on of hands or application of physical force to restrain movement.")  Accordingly, merely speaking with a person does not constitute a "seizure" under the Fourth Amendment.  *See, e.g., Florida v. Bostick*, 501 U.S. 429, 434 (1991) (holding that a person is not seized "simply because a police officer approaches an individual and asks a few questions.")

In determining whether a "seizure" occurred, courts consider: (1) the number of officials present, (2) whether weapons were displayed, (3) whether the encounter occurred in a public setting, (4) whether the officials authoritative manner would imply that compliance would be compelled, and (5) whether the officials advised the detainee of their right to terminate the encounter.  *United States v. Brown*, 563 F.3d 410, 415 (9th Cir. 2009).  These factors, however, are not necessarily applicable in the context of whether social workers "seized" a child during their investigation.  As a result, courts have considered other non-exclusive factors including: (1) the age, (2) education, and (3) mental state of the child.  *See Dees v. Cnty. of San Diego*, 302 F. Supp. 3d 1168, 1178 (S.D. Cal. 2017); *Phillips v. Cnty. of Orange*, 2015 U.S. Dist. LEXIS 137662, at *20 (S.D.N.Y. 2015) ("When evaluating whether a child was seized, a court should consider

8

the age of the child at issue."); *Jones v. Hunt*, 410 F.3d 1221, 1226 (10th Cir. 2005); *Doe v. Heck*, 327 F.3d 492, 510 (7th Cir. 2003).

In this case, Jones was not seized, and therefore, he cannot pursue a claim under the Fourth Amendment. *Wallis v. Spencer*, 202 F.3d 1126, 1137 n.8 (9th Cir. 1999) (holding a parent's claim based on a seizure of their child "should properly be assessed under the Fourteenth Amendment standard for interference with the right of family association," and that the child's claim "should properly be assessed under the Fourth Amendment."); *see also Mabe v. San Bernardino County*, 237 F.3d 1101, 1111 (9th Cir. 2001). In addition, the Minor Plaintiffs fail to sufficiently allege that they were "seized" by Social Workers when their mother, Christina, voluntarily entered into a Safety Plan with Jennings. Specifically, Minor Plaintiffs do not claim Social Workers removed them from their home or that the Social Workers used physical force against them or made verbal statements directed at them. (*See* generally FAC.) Instead, the Minor Plaintiffs were always with their mother, Christina. (*Id*. at ¶ 25.) Jennings only prepared the Safety Plan, which Christina voluntary signed. (*Id*. at ¶ 26.) Christina decided to retain physical custody of the Minor Plaintiffs until she could obtain a temporary custody order.[1] (*Id*. at ¶ 25.) The only time Jennings was in the presence of the Minor Plaintiffs was when he attended the physical examination of E.J. on March 21, 2017. (*Id*. at ¶ 23.)

There is no evidence to suggest that Jones attempted to enforce the custody agreement on March 22, 2017 or that Jennings was present to block any such enforcement of the agreement. There are also no other factual allegations related to any government conduct directed towards the Minor Plaintiffs. Therefore, Social Workers are entitled to qualified immunity because the Minor Plaintiffs fail to state a Fourth Amendment violation. *Ashcroft*, 563 U.S. at 735.

/ / /

---

[1] In California, if a parent decides to violate a custody agreement, the parent is provided a safe harbor from criminal prosecution if they had "a good faith and reasonable belief that the child, if left with the other person, [would] suffer immediate bodily injury." Cal. Penal Code § 278.7.

18-cv-2729-W-LL

1   Even if this Court finds the Minor Plaintiffs sufficiently pled a seizure, their claim

2   would still fail because any seizure was reasonable.  The Fourth Amendment only

3   protects against "unreasonable" seizures.  *Skinner v. Ry. Labor Executives' Ass'n*, 489

4   U.S. 602, 619 (1989).  The determination of whether "a particular seizure is reasonable

5   under the Fourth Amendment requires a careful balancing of the nature and quality of the

6   intrusion on the individual's Fourth Amendment interests against the countervailing

7   governmental interests at stake." *Graham*, 490 U.S. at 396 (internal quotation marks and

8   citation omitted).  A social worker may remove or seize a child if the social worker has

9   information that "provides reasonable cause to believe that the child is in imminent

10  danger of serious bodily injury and that the scope of the intrusion is reasonably necessary

11  to avert specific injury." *Wallis*, 202 F.3d at 1138; *see also Kirkpatrick*, 843 F.3d at 789.

12  "A seizure [is] unlawful [only] when it is 'more intrusive than necessary.'" *Ganwich v.*

13  *Knapp*, 319 F.3d 1115, 1122 (9th Cir. 2003) (quoting *Florida v. Royer*, 460 U.S. 491, 504

14  (1983)).

15  Here, the Social Workers' actions were in response to a report of child abuse.

16  (FAC ¶ 22.)  The reported physical abuse related to E.J., a two-year old.  (*Id*. at ¶¶ 19,

17  22.)  E.J. had sustained bruising to his buttocks.  (*Id*. at ¶ 20.) A physical injury that

18  results in the bruising of a two-year olds' buttocks is serious and justified the purported

19  seizure.  In addition, any seizure by Social Workers was, at most, minimally intrusive.

20  Under the Safety Plan, the Minor Plaintiffs were to stay with their mother until she could

21  obtain a temporary custody order.  (*Id*. at ¶ 25.)  Jones was able to see his children under

22  the supervision of their grandmother, and there are no allegations that Jones attempted to

23  see the Minor Plaintiffs and was prevented from doing so.  (*Id*.)  The parameters of the

24  recommended Safety Plan were also nearly identical to the temporary custody order the

25  family court issued.  (*Id*. at ¶¶ 33-34, 36.)  Therefore, any seizure was reasonable under

26  the Fourth Amendment.  As a result, Social Workers are entitled to qualified immunity.

27  *Ashcroft*, 563 U.S. at 735

28  / / /

**B.     Plaintiffs' Fourteenth Amendment Claim**

    *1.     Minor Plaintiffs' Fourteenth Amendment Claims are Duplicative of their Fourth Amendment Claims and should be Dismissed*

Here, to the extent Plaintiffs assert that the Safety Plan violated Minor Plaintiffs' Fourteenth Amendment rights, such allegations are duplicative of Minor Plaintiffs' Fourth Amendment claim.  The Supreme Court has held that where a constitutional claim is covered by a specific constitutional amendment, then "the claim must be analyzed under the standard appropriate to that specific provision, not under the rubric of substantive due process." *Sacramento v. Lewis*, 523 U.S. 833, 843 (1998) (internal quotation omitted); *accord Albright v. Oliver*, 510 U.S. 266, 272-73 (1994) (noting that when a broad "due process" violation is alleged, but a particular amendment "provides an explicit textual source of constitutional protection" against a particular sort of government behavior, "that Amendment, not the more generalized notion of 'substantive due process,' must be the guide for analyzing the[] claims." (quoting *Graham v. Connor*, 490 U.S. 386, 395 (1989)); *Fontana v. Haskin*, 262 F.3d 871, 882 (9th Cir. 2001).  Thus, because the Fourth Amendment provides an explicit textual source of constitutional protection, Minor Plaintiffs' Fourteenth Amendment claim is subsumed by the Fourth Amendment analysis above.

    *2.     Plaintiffs Fail to State a Fourteenth Amendment Claim*

The Fourteenth Amendment protects individuals against the deprivation of liberty or property by the government without due process." *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 904 (9th Cir. 1993).  "The substantive due process right . . . to family association is well established." *Rosenbaum v. Cnty. of Washoe*, 663 F.3d 1071, 1079 (9th Cir. 2011); *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981) (Parents have a protected interest in the "companionship, care, custody and management of [their] children.") (internal quotation marks and citation omitted).  However, parents' rights are not absolute. *Mueller v. Auker*, 700 F.3d 1180, 1186 (9th Cir. 2012).

/ / /

To amount to a violation of substantive due process, however, the harmful conduct must shock [ ] the conscience" or "offend the community's sense of fair play and decency." *Id*. (quoting *Rochin v. California*, 342 U.S. 165, 169–70 (1952)). "Conduct that 'shocks the conscience' is 'deliberate indifference to a known or so obvious as to imply knowledge of, danger.'" *Tamas v. Dep't of Soc. & Health Servs*., 630 F.3d 833, 844 (9th Cir. 2010) (quoting *Kennedy v. City of Ridgefield*, 439 F.3d 1055, 1064 (9th Cir. 2006)).

"Deliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action." *Bryan County v. Brown*, 520 U.S. 397, 410 (1997) (internal quotation marks omitted; emphasis added). Mere negligence is insufficient to satisfy the deliberate indifference standard. *See Famer v. Brennan*, 511 U.S. 825, 836 (1994); *Richardson v. Idaho Dep't of Health & Welfare*, 2015 WL 7295443, at *5 (D. Idaho Nov. 18, 2015) ("Deliberate indifference is not the same thing as negligence or carelessness.")

Here, Jones fails to allege any facts that show the Social Workers' conduct "shocked the conscious." Jennings prepared the Safety Plan, which Minor Plaintiffs' Mother, Christina, voluntarily signed. (FAC ¶ 26; RJN, Ex. B.) The plan provided that Christina would retain custody over the Minor Plaintiffs until she could seek a family court order. (FAC ¶ 25.) The Minor Plaintiffs were never removed from their mother's home. (*See* generally FAC.) During that time, Jones could have visited the Minor Plaintiffs under the supervision of their grandmother. (*Id*. at ¶ 25.) The family court held a hearing, which both parents attended, two days after Jones would normally have received the Minor Plaintiffs from Christina. (*Id*. at ¶¶ 18, 33-34.) The temporary custody order allowed Jones to have supervised visits with the Minor Plaintiffs, which is nearly identical to the recommended visitation arrangement in the Safety Plan. (*Id*. at ¶¶ 25, 34, 36.)

Although Jennings called Jones to inform him that Christina would be retaining custody of the Minor Plaintiffs until she could obtain a temporary custody order and tried

12

to "coerce" Jones into signing the Safety Plan, Jennings never physically prevented Jones from picking up the Minor Plaintiffs or from enforcing the Custody Agreement.  (FAC ¶¶ 28, 32.)  In fact, Jones does not even allege that he or Jennings had any contact with the Minor Plaintiffs during the time period that he was entitled to custody under the Custody Agreement.  (*See* generally FAC.)  Jones may have decided it was in his, or the Minor Plaintiffs', best interest to wait until the family court held a hearing or issued a temporary order.

Thus, Jones fails to allege that Social Workers' conduct "shocked the conscious." The Social Workers purported interference with Jones' right to familial association, was minimal, if at all, which is insufficient to support a Fourteenth Amendment violation. *See Brittain v. Hansen*, 451 F.3d 982, 994-96 (9th Cir. 2006).  Therefore, Social Workers are entitled to qualified immunity.  *Ashcroft*, 563 U.S. at 735.

### C.   Plaintiffs' Claims Under the First Amendment Fail Because Plaintiffs Cannot Establish a Claim Under the Fourteenth Amendment

"[T]he First Amendment protects…family relationships that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.*"  Lee v. City of Los Angeles*, 250 F.3d 668, 685 (9th Cir. 2001) (quoting *Bd. of Directors of Rotary Int'l v. Rotary Club of Duarte*, 481 U.S. 537, 545 (1987)) (internal quotation marks omitted).  This right protects "intimate relations 'from unwarranted state inference'…"  *Keates v. Koile*, 883 F.3d 1228, 1236 (9th Cir. 2018) (quoting *Roberts v. U.S. Jaycees*, 468 U.S. 609, 619 (1984)).  The "First Amendment right[ ] to familial association [is] measured by the same standard as Fourteenth Amendment rights to familial association."  *Kaur v. City of Lodi*, 263 F. Supp. 3d 947, 973 (E.D. Cal. 2017); *Thomas v. San Diego HHS Agency*, 2018 WL 6168276, 2018 U.S. Dist. LEXIS 199768, at *7 n.5 (S.D. Cal. 2018) ("The right to familial association under the First and Fourteenth Amendments are analyzed in the same manner.")  Accordingly, Plaintiffs must establish that the Social Workers' alleged actions

13

1  "shocked the conscience."  *Rosenbaum*, 663 F.3d at 1079.

2      Although the Ninth Circuit has recognized the ability to pursue simultaneous

3  claims under the First and Fourteenth Amendment for interference with the right to

4  familial association (*Lee*, 250 F.3d at 685–86), Plaintiffs have failed to adequately plead

5  the violation of either constitutional right.  As discussed above, Plaintiffs' FAC is devoid

6  of factual allegations establishing that the Social Workers violated their Fourteenth

7  Amendment right, by acting with "deliberate indifference to a known or so obvious as to

8  imply knowledge of, danger."  *Tamas*, 630 F.3d at 844 (quotation marks and citation

9  omitted).  Thus, if Plaintiffs are unable to allege a violation under the Fourteenth

10  Amendment, then Plaintiffs cannot pursue a claim based on an alleged deprivation of

11  their First Amendment rights – as both are measured on the same standard.  *See Kaur*,

12  263 F. Supp. 3d at 973.

13      **D.    Defendants David Jennings and Dennis Leggett are Entitled to**
      **Qualified Immunity Because it was not Clearly Established that Their**
14      **Conduct Violated the Fourth, Fourteenth, or First Amendment**

15

16      Even if this Court finds that Plaintiffs sufficiently stated a constitutional violation,

17  Social Workers are entitled to qualified immunity because there is no binding authority

18  that a social worker's preparation of a safety plan that recommends a parent retain

19  custody and seek a temporary custody order from a family court violates the Fourth,

20  Fourteenth, or First Amendment.  The Ninth Circuit requires identifying "precedent" at

21  the time of the alleged constitutional violation "that put [the defendants] on clear notice"

22  that their conduct was unlawful.  S.*B. v. Cnty. of San Diego*, 864 F.3d 1010, 1015 (9th

23  Cir. 2017) (emphasis added).  The removal, if any, in this case, was by one parent from

24  the other, and there is no clearly established law that prohibits such conduct.  *See, e.g.,*

25  *Dees v. Cnty. of San Diego*, 2016 WL 9488706, at *7 (S.D. Cal. May 13, 2016) ("The

26  Parties have not presented, nor is the Court aware of, any authority stating that a

27  government official who supports one parent's decision to take custody of his children

28  has violated the other parent's constitutional rights.")  While the Supreme Court does "not

require a case directly on point" in order for a right to be clearly established, "existing precedent must have placed the statutory or constitutional question beyond debate." *Ashcroft*, 563 U.S. at 741.  Accordingly, Social Workers are entitled to qualified immunity.

## VI.   PLAINTIFFS FAIL TO STATE A CLAIM FOR SUPERVISOR LIABILITY AGAINST DEFENDANT DENNIS LEGGETT

Plaintiffs' claims against supervisor defendant Leggett are premised solely on his supervision of Jennings' conduct, rather than any direct involvement.  The claims against Leggett fail because Plaintiffs do not allege any facts of personal involvement.

An individual official is not liable under section 1983 unless they personally participated in the violation.  *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Plaintiffs must allege "specific facts as to each individual defendant's deliberate indifference ."  *Leer v. Murphy*, 844 F.2d 628, 633–634 (9th Cir. 1988).  Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."  *Hydrick v. Hunter*, 669 F.3d 937, 942 (9th Cir. 2012) (internal quotation marks and citation omitted); *see Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998), cert. den. 525 U.S. 1154 (1999) (conclusory allegations insufficient to show individual participation).

Historically, individual liability to a government official solely regarding their supervision of a subordinate could not result from negligent failure to monitor or instruct—the supervisory official was responsible for their subordinate's constitutional violations only if the supervisor set in motion a chain of events that proximately caused the deprivation, or knew of the pending violation yet failed to attempt to prevent it (i.e., acquiescence).  *See Redman v. County of San Diego*, 942 F.2d 1435, 1446 (9th Cir. 1991) (en banc).  In *Iqbal*, 556 U.S. at 676, the Supreme Court further narrowed in what instances a public official can be liable for a subordinate's actions, holding that the plaintiff must plead and prove each official "through [their] own individual actions, has violated the Constitution."  *Hydrick*, 669 F.3d at 942 (Extended I*qbal*'s supervisory

15

liability analysis to Fourteenth Amendment deliberate indifference claims, holding "plaintiffs must still allege sufficient facts to plausibly establish the defendant's 'knowledge of' and 'acquiescence in' the unconstitutional conduct of his subordinates," and noting that general conclusions would not suffice.)

Leggett is Jennings' supervisor.  (FAC ¶ 26.)  Plaintiffs allege Jennings prepared the Safety Plan with Leggett's approval and consent.  (*Id*.)  Plaintiffs also allege Leggett prepared the Safety Plan with Jennings.  (*Id*. at ¶ 27.)  However, this allegation is contradicted by Plaintiffs' claim that Jennings prepared the Safety Plan in the presence of Christina and Christina's mother, but not Leggett.  (*Id*. at ¶ 26.)  The FAC is devoid of factual allegations of Leggett's personal involvement in the purported conduct. Therefore, this Court should dismiss any claim against Leggett.  *Taylor*, 880 F.2d at 1045.

## VII.   PLAINTIFFS CANNOT ESTABLISH *MONELL* LIABILITY AGAINST THE COUNTY OF SAN DIEGO

### A.   The First Amended Complaint Fails to Allege Any Individual Defendants Violated Plaintiffs' Constitutional Rights

To establish *Monell* liability, there must be an underlying constitutional violation, and "[if] no constitutional violation occurred, the municipality cannot be held liable. *Long v. City of Honolulu*, 511 F.3d 901, 907 (9th Cir. 2007); *Scott v. Henrich*, 39 F.3d 912, 916 (9th Cir. 1994) ("Municipal defendants cannot be held liable [where] no constitutional violation occurred.")

Because Plaintiffs fail to allege a constitutional violation, the County is not liable under *Monell*.  Therefore, this Court should dismiss any claim against the County.

### B.   Plaintiffs' Conclusory Allegations As to County Policy, Custom, and Practice Have No Factual Support

Even if this Court finds that a constitutional violation did occur, the *Monell* claim still fails because Plaintiffs do not cite a formal policy nor do they sufficiently allege the existence of a long-standing practice or custom.  To satisfy this element, Plaintiffs must identify a policy, practice, or custom that caused the injury.  *Bd. Of Cty. Comm'rs v.*

16

1   *Brown*, 520 U.S. 397, 403 (1997); *see also Monell v. New York City Dept. of Social*

2   *Servs.*, 436 U.S. 658, 691 (1978).  If Plaintiffs do not identify a formal government

3   policy, then they must show a "longstanding practice or custom which constitutes the

4   standard operating procedure of the local governmental entity." *Trevino v. Gates*, 99

5   F.3d 911, 918 (9th Cir. 1996) (internal quotation marks and citation omitted).  The

6   custom must be so "persistent and widespread" that it constitutes a "permanent and well

7   settled policy." *Monell*, 436 U.S. at 691 (internal quotation marks and citation omitted).

8   As such, a single incident cannot establish municipal liability.  *Trevino,* 99 F.3d at 918.

9       Here, rather than establishing a longstanding practice or custom of the County,

10  Plaintiffs only allege, at most, a single occurrence (their own).  Plaintiffs' sole reliance on

11  their own incident in support of a policy or custom is insufficient.  *Trevino*, 99 F.3d at

12  918.  Plaintiffs do not cite a formal County policy.  Instead, Plaintiffs allege a list of

13  general policies in a conclusory manner.  (*See* FAC ¶ 55)  (County's policies include

14  "[t]he policy, custom, or practice of separating children from their parents without first

15  obtaining a protective custody warrant in the absence of exigent circumstances [and] [the

16  policy of] [s]eparating children from their parent, without a court order, if the parent does

17  not sign a Safety Plan that he does not agree with.")  These conclusory allegations are

18  insufficient to survive a motion to dismiss.  *Twombly*, 550 U.S. at 555; *McManus v.*

19  *County of San Diego*, 2016 WL 3552007, at *6 (S.D. Cal. 2016) (deeming substantially

20  similar child removal policy averments too conclusory under *Iqbal*); *see also Inman v.*

21  *Anderson*, 294 F. Supp. 3d 907, 919-22 (N.D. Cal. 2018).

22      **C.    Plaintiffs Fail to Show that a County Policy was the Moving Force**
23             **Behind the Purported Violations**

24      Even if Plaintiff had identified a policy, custom or practice, Plaintiffs fail to allege

25  a County policy or long-standing custom was the "moving force" behind the purported

26  violations.

27      "To sufficiently plead a Monell claim and withstand a Rule 12(b)(6) motion to

28  dismiss, allegations in a complaint 'may not simply recite the elements of a cause of

17

1  action, but must contain sufficient allegations of underlying facts to give fair notice and

2  to enable the opposing party to defend itself effectively.'" *Johnson v. Shasta Cnty.*, 83 F.

3  Supp. 3d 918, 930 (E.D. Cal. 2015) (quoting *A.E. v. Cnty. of Tulare*, 666 F.3d 631, 637

4  (9th Cir. 2012)).  Additionally, for a policy, custom, or practice to constitute the "moving

5  force" behind a constitutional violation, there must be a "direct causal link between the

6  municipal action and the deprivation of federal rights." *Brown*, 520 U.S. at 404.  That is,

7  the "identified deficiency" in the government's policies must be "closely related to the

8  ultimate injury" such that had the policy or practice been different, the injury "would

9  have been avoided." *Gibson v. Cnty. of Washoe*, 290 F.3d 1175, 1196 (9th Cir. 2002)

10  (internal quotation marks and citation omitted).

11      Plaintiffs label the vague policies and customs as the "moving force" behind the

12  purported constitutional violations.  (*See* FAC ¶ 55)  (County "established and/or

13  followed policies, procedures, customs, and/or practices which policies were the moving

14  force behind the violations.")  Plaintiffs' conclusory allegations fail to satisfy the

15  pleading standard. *Twombly*, 550 U.S. at 555.  Therefore, the County is not liable.

16      **D.    Plaintiffs Cannot Establish a Failure to Train Claim**

17      Plaintiffs also appear to allege a failure to train claim.  (FAC ¶ 54)  (County "had a

18  duty to use reasonable care to select, assign, supervise, train, control and review the

19  activities of all their agents.")

20      For a municipality to be liable under section 1983 for failure to train, the

21  "municipality's failure to train its employees in a relevant respect must amount to

22  'deliberate indifference to the rights of persons with whom the [untrained employees]

23  come into contact.'" *Connick v. Thompson*, 563 U.S. 51, 61 (2011) (citing *City of

24  Canton v. Harris*, 489 U.S. 378, 388 (1989)).  "Deliberate indifference is a stringent

25  standard of fault requiring proof that a municipal actor disregarded a known or obvious

26  consequence of his action." *Id*. (internal quotation marks and citation omitted).  "Mere

27  negligence in training or supervision" is insufficient. *Dougherty v. City of Covina*, 654

28  F.3d 892, 900 (9th Cir. 2011).

18-cv-2729-W-LL

Plaintiffs do not set forth any facts that would rise to the level of deliberate indifference.  Plaintiffs' bare allegations do not satisfy federal pleading standards and fail to state a claim for failure to train.  *Twombly*, 550 U.S. at 555.

## VIII.  CONCLUSION

For the foregoing reasons, this Court should dismiss the FAC in its entirety.


DATED: December 10, 2018                THOMAS E. MONTGOMERY, County Counsel

                                By      s/Laura E. Dolan, Senior Deputy
                                        Attorneys for Defendant County of San Diego,
                                        David Jennings, and Dennis Leggett

18-cv-2729-W-LL