1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF CALIFORNIA

GAVIN JONES, et al.,

Plaintiffs,

v.

COUNTY OF SAN DIEGO, et al.,

Defendants.

Case No.:  18-cv-2729 W (LL)

**ORDER DENYING DEFENDANTS'
MOTION TO DISMISS [DOC. 5]**

  Defendants County of San Diego, David Jennings and Dennis Leggett move to dismiss the Complaint under Federal Rule of Civil Procedure 12(b)(6).  Plaintiffs Gavin Jones and minors W.J. and E.J. oppose.

  The Court decides the matter on the papers submitted and without oral argument. See Civ. L.R. 7.1(d.1).  For the following reasons, the Court **DENIES** Defendants' motion [Doc. 6].

//

//

//

1

# I. BACKGROUND

The following allegations are taken from the First Amended Complaint ("FAC"[1]), and documents attached to Defendants' Request for Judicial Notice ("RJN" [Doc. 5-2]).

Plaintiff Gavin Jones is the father of minor Plaintiffs W.J. and E.J. (*FAC* ¶¶ 1–3, 14.) Defendant Christina Jones is W.J. and E.J.'s mother.[2] (*Id.* ¶¶ 7, 14.) Defendant David Jennings is employed by Defendant County of San Diego's Health and Human Services Agency ("HHSA"). (*Id.* ¶¶ 4, 5.) Defendant Dennis Leggett is Jennings' supervisor. (*Id.* ¶¶ 6, 26.)

In December 2016, Gavin filed for divorce in the San Diego Superior Court. (*FAC* ¶ 17.) He contends his marriage with Christina began to fall apart in 2013 when Gavin suspected she was unfaithful and addicted to illegal narcotics. (*Id.* ¶ 16.) Gavin also contends he was disturbed by several incidents of domestic violence by Christina, "at least one of which was reported to law enforcement." (*Id.*)

Within three weeks of filing for divorce, Gavin sought "temporary custody orders because Christina wrongfully withheld the children from him and interfered with visitation." (*FAC* ¶ 18.) On the day of the hearing, the parties reached a custody agreement, under which Christina had custody of the children from noon on Saturday until 10 a.m. on Wednesday, and Gavin would have custody for the remainder of the time. (*Id.*) The agreement was "entered as an interim order of the Court" (the "Custody Order"). (*Id.*)

On Saturday, March 18, 2017, Gavin returned E.J. and W.J. to Christina as required under the Custody Order. (*FAC* ¶ 19.) At the time, E.J. was 2 years old and W.J. was 3 years old. (*Id.* ¶ 19.) The next day, Christina called Gavin and told him that a "neighbor had noticed bruising on [E.J.]'s buttocks while changing his diapers." (*Id.* ¶ 20.) Gavin responded that "the children had been learning to ride a pedal-less bike over

---

[1] The First Amended Complaint is attached to the Notice of Removal [Doc. 1] as Exhibit C [Doc. 1-4].
[2] Christina Jones is named as a nominal defendant under Cal. Code of Civil Procedure § 376(a).

2

the weekend, and that [E.J.] had fallen off the bike." (*Id.*) Gavin alleges that as of March 2017, he had never physically disciplined the children and he told Christina that if the falling from the pedal-less bike did not cause the bruising, "perhaps the child had sustained an injury while in Christina's care…." (*Id.* ¶¶ 20, 21.)

On Monday, March 20, someone contacted Defendant HHSA to report suspected child abuse. (*FAC* ¶ 22.) The next day, E.J. was examined by Dr. Marilyn Kaufhold at Rady Children's Chadwick Center to screen for physical abuse. (*Id.* ¶ 23.) Defendant Jennings was present during the examination. (*Id.*) After the exam, Dr. Kaufhold, Jennings and Christina had a discussion wherein Christina stated: (1) she changed the children's diapers more than once on the day Gavin returned them and she did not notice any bruises on E.J.; (2) she did not notice E.J.'s bruising until the next day; and (3) she told them Gavin's explanation for the bruising. (*Id.* ¶ 24.) Jennings then prepared a "Safety Plan" that was to "go into effect immediately" and remain in place for 30 days. (*Id.* ¶¶ 25, 27.) Under the plan, E.J. and W.J. would reside with Christina, who would go to family court to obtain a temporary custody order, and Gavin was limited to only supervised visits with his children. (*Id.* ¶ 25.) Christina and her mother signed the document. (*Id.* ¶ 26.) Jennings consulted with Defendant Leggett, who authorized the Safety Plan. (*Id.* ¶¶ 27, 29.)

After the meeting, "Jennings called Gavin and informed him of the decision to seize and detain the children in Christina's care without his consent." (*FAC* ¶ 28.) "Jennings instructed Gavin that he was prohibited from picking up the children at the regularly scheduled time on Wednesday, March 22, 2017" and he "ordered that Gavin was not to have any unsupervised contact with the children." (*Id.*)

On Wednesday, March 22, Gavin met with Jennings, who attempted to convince Gavin to sign the Safety Plan. (*FAC* ¶ 32.) Gavin refused to sign the document and objected to the interference with his parental rights. (*Id.*)

On or about Thursday, March 23, Christina filed an *ex parte* application with the family court for a temporary custody order. (*MTD* [Doc. 5] 3:21–22, citing *RJN* [Doc. 5-

3

2] Ex. C.)  The next day, Gavin and Christina appeared at the hearing.  (*FAC* ¶ 33.)
Christina presented the Safety Plan as evidence of the need for the temporary custody
order.  (*Id.*)  Based on the Safety Plan's statement that E.J. "has inflicted bruising to his
buttocks & lower back area after returning from the father's care on 3/18/17," the court
granted Christina's request for temporary custody and restricted Gavin to supervised
visits.  (*Id.* 34.)  Approximately 30 days later, the family court reinstated the previous
Custody Order and Gavin's custody over E.J. and W.J.  (*Id.* ¶ 38.)

On April 24, 2018, Plaintiffs filed this lawsuit in the San Diego Superior Court.
On December 3, 2018, Defendant County of San Diego, Jennings and Leggett removed
the case to this Court.  Before the removal, Plaintiffs filed the First Amended Complaint
alleging a cause of action against Defendants Jennings and Leggett for violation of
Plaintiffs' First, Fourth and Fourteenth Amendment rights under 42 U.S.C. § 1983, and a
cause of action against the County of San Diego under Monell v. Department of Social
Services, 436 U.S. 658 (1978).  Defendants now move to dismiss the lawsuit.

## II.    LEGAL STANDARD

The Court must dismiss a cause of action for failure to state a claim upon which
relief can be granted.  Fed. R. Civ. P. 12(b)(6).  A motion to dismiss under Rule 12(b)(6)
tests the legal sufficiency of the complaint.  See Parks Sch. of Bus., Inc. v. Symington, 51
F.3d 1480, 1484 (9th Cir. 1995).  A complaint may be dismissed as a matter of law either
for lack of a cognizable legal theory or for insufficient facts under a cognizable theory.
Balisteri v. Pacifica Police Dep't., 901 F.2d 696, 699 (9th Cir. 1990).  In ruling on the
motion, a court must "accept all material allegations of fact as true and construe the
complaint in a light most favorable to the non-moving party."  Vasquez v. L.A. Cnty.,
487 F.3d 1246, 1249 (9th Cir. 2007).

A complaint must contain "a short and plain statement of the claim showing that
the pleader is entitled to relief."  Fed. R. Civ. P. 8(a)(2).  The Supreme Court has
interpreted this rule to mean that "[f]actual allegations must be enough to raise a right to

4

relief above the speculative level." Bell Atl. Corp. v. Twombly, 550 U.S. 554, 555 (2007). The allegations in the complaint must "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Twombly, 550 U.S. at 570).

Well-pled allegations in the complaint are assumed true, but a court is not required to accept legal conclusions couched as facts, unwarranted deductions, or unreasonable inferences. See Papasan v. Allain, 478 U.S. 265, 286 (1986); Sprewell v. Golden State Warriors, 266 F.3d 979, 988 (9th Cir. 2001).

## III. DISCUSSION

### A. The *Rooker-Feldman* Doctrine.

Defendants argue this lawsuit is barred by the *Rooker-Feldman* doctrine because Plaintiffs' claims are "based on Social Workers' conduct that occurred after the family court issued its order" and thus the lawsuit is attempting to attack the family court's temporary custody order. (*MTD* [Doc. 5-1] 5:22–25, 6:14–16.)

The *Rooker-Feldman* doctrine precludes federal district courts from reviewing "the final determinations of a state court in judicial proceedings." Branson v. Nott, 62 F.3d 287, 291 (9th Cir. 1995). The doctrine prevents losers in state court litigation from bringing federal cases based on alleged "injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." Exxon Mobil Corp. v. Saudi Basic Indus. Corp., 544 U.S. 280, 284 (2005). The doctrine applies if,

> claims raised in the federal court action are "inextricably intertwined" with the state court's decision such that the adjudication of the federal claims would undercut the state ruling or require the district court to interpret the application of state laws or procedural rules, then the federal complaint must be dismissed for lack of subject matter jurisdiction.

Bianchi v. Rylaarsdam, 334 F.3d 895, 898 (9th Cir. 2003).

5

In support of their argument, Defendants cite several federal cases holding the *Rooker-Feldman* doctrine barred the lawsuit. But Defendants cases involved direct challenges to state-court proceedings that bear little resemblance to this case. For example, in <u>Ignacio v. Judges of the United State Court of Appeals for the Ninth Circuit</u>, 453 F.3d 1160 (9th Cir. 2006), the pro-se plaintiff's lawsuit "attempt[ed] to attack collaterally the California superior court determination" suspending his access to his minor son and dividing up marital assets between the plaintiff and his ex-wife. <u>Id.</u> at 1162, 1165. In <u>Bianchi v. Rylaarsdam</u>, 334 F.3d 895, plaintiff filed federal due-process claims aimed at challenging the state-appellate court's decision denying plaintiff's attempt to recuse a Court of Appeal Justice from his state case.

In contrast to Defendants' cases, here, Plaintiffs were the prevailing party in the state-family court proceeding—which ultimately restored Gavin's custody over E.J. and W.J.—and therefore are not challenging the family court's determination. Moreover, contrary to Defendants' argument, Plaintiffs' claims are based on the social worker Defendants' conduct that occurred before Christina filed her *ex parte* request for temporary custody. The FAC alleges Jennings' Safety Plan went into effect immediately, which was two days before Christina initiated the family-court proceeding seeking temporary custody, and three days before the hearing. (*FAC* ¶¶ 27, 33; *MTD* 3:21–22, citing *RJN* Ex. C.) Consistent with the allegation the Safety Plan was to take effect immediately, the FAC also alleges that "[a]fter meeting with Christina and preparing the Safety Plan, Defendant Jennings called Gavin and informed him of the decision to seize and detain the children in Christina's care…." (*Id.* ¶ 28.) Based on these factual allegations, the Court finds *Rooker-Feldman* does not bar Plaintiffs' claims.[3] See <u>D.M. v. County of Berks</u>, 929 F.Supp.2d 390, 399 n. 4 (E.D. Pa. 2013) (rejecting application of

---

[3] At this time, the Court need not decide whether any alleged damages accruing after the temporary-custody order was entered are barred under *Rooker-Feldman*.

*Rooker-Feldman* because plaintiffs' claims were based on conduct that occurred before the state-court proceedings).

### B.    **The Domestic-Relations Exception.**

Defendants next contend the lawsuit is barred by the Domestic-Relations Exception.  As explained above, Plaintiffs' claims are primarily based on the social worker Defendants' conduct that occurred before the family-court proceeding was filed.  Accordingly, the Domestic-Relations exception does not apply.[4]

### C.    **Qualified Immunity.**

Defendants next argue the social worker Defendants are entitled to qualified immunity. (*MTD* 6:27–15:4.)  In support of this argument, Defendants contend Plaintiffs have not stated a constitutional violation and, even if they have, the right allegedly violated was not clearly established.  (*Id.*)

Qualified immunity shields government officials from liability for monetary damages unless the plaintiff establishes (1) the conduct violated a constitutional right, and (2) the right was "clearly established" when the misconduct occurred.  Pearson v. Callahan, 555 U.S. 223, 232, 236–42 (2009) (modifying the two-step inquiry in Saucier v. Katz, 533 U.S. 194 (2001), to allow courts discretion in deciding which prong to address first depending on the facts of the particular case).  "Clearly established" means "[t]he contours of the right must be sufficiently clear that a reasonable official would understand what he is doing violates that right" with careful consideration to the facts of the particular case.  Anderson v. Creighton, 483 U.S. 635, 640 (1987).

---

[4] In Atwood v. Fort Peck Tribal Court Assiniboine, 513 F.3d 943 (9th Cir. 2008), the Ninth Circuit stated that the Domestic-Relations Exception "applies only to the diversity jurisdiction statute."  Id. at 947 (citations omitted).  This lawsuit involves federal-question claims.  Thus, Atwood appears to bar application of the doctrine to this case on that basis as well.

**1.    Were Plaintiffs' constitutional rights violated?**

The first cause of action alleges a violation of Plaintiffs' "right to familial association guaranteed under… the First, Fourth, and Fourteenth Amendments" based on Defendants' conduct in "removing, detaining, and continuing to detain, [W.J.] and [E.J.] from the care, custody, and control of their father, Gavin Jones…." (*FAC* ¶¶ 41, 43.) Defendants argue they are entitled to qualified immunity because the FAC's factual allegations fail to allege a Constitutional violation. (*MTD* 7:22–14:12.)

The "interests of parents in the care, custody, and control of their children—is perhaps the oldest of the fundamental liberty interests recognized by this Court." Troxel v. Granville, 550 U.S. 57, 65 (2000). "Parents and children have a well-elaborated constitutional right to live together without governmental interference." Wallis v. Spencer, 202 F.3d 1126, 1136 (9th Cir. 2000). "Our cases hold that the Fourteenth, First, and Fourth Amendments provide a guarantee 'that parents will not be separated from their children without due process of law except in emergencies.'" Keates v. Koile, 883 F.3d 1228, 1236 (2018) (citing Mabe v. San Bernardino Cty., Dep't of Pub. Soc. Servs., 237 F.3d 1101, 1107–09 (9th Cir. 2001)). Despite the different constitutional sources of the right to familial association, the Ninth Circuit has "held that 'the same legal standard applies in evaluating Fourth and Fourteenth Amendment claims for the removal of children." Id. (quoting Wallis, 202 F.3d at 1137 n.8). This standard provides:

> Officials may remove a child from the custody of its parent without prior
> judicial authorization only if the information they possess at the time of the
> seizure is such as provides reasonable cause to believe that the child is in
> imminent danger of serious bodily injury and that the scope of the intrusion
> is reasonably necessary to avert that specific injury.

Wallis, 202 F.3d at 1138 (citations omitted).

Here, according to the FAC, Gavin had legal custody of E.J. and W.J. beginning on Wednesday at 10:00 a.m. (*FAC* ¶ 18.) The FAC alleges that on Tuesday, March 22, the social worker Defendants prepared a Safety Plan giving Christina full custody of the children, and Jennings then "called Gavin and informed him of the decision to seize and

8

detain the children in Christina's care without his consent." (*Id.* ¶ 28.) "Jennings [also] instructed Gavin that he was prohibited from picking up the children at the regularly scheduled time on Wednesday, March 22, 2017" and he "ordered that Gavin was not to have any unsupervised contact with the children." (*Id.*) These facts clearly establish the social worker Defendants interfered with Gavin, E.J. and W.J.'s constitutional right to familial association. Therefore, whether this interference constitutes a violation depends on (1) if the information provided to the social worker Defendants gave them reasonable cause to believe E.J. and W.J. were in imminent danger of serious bodily injury, and (2) if so, whether the scope of the intrusion was reasonably necessary.

The FAC alleges that when Jennings prepared the Safety Plan and informed Gavin he was prohibited from picking up the children, Jennings was aware of the following:

> (1) Gavin returned E.J. and W.J. to Christina on Saturday before noon;
>
> (2) Christina did not see any bruising on E.J. on Saturday despite changing the children's diapers more than once;
>
> (3) the bruising on E.J. was first noticed on Sunday, the day after he returned from Gavin's custody; and
>
> (4) Gavin told Christina "the children had been learning to ride a pedal-less bike over the weekend, and that [E.J.] had fallen off the bike."

(*FAC* ¶ 24.) Particularly relevant is the allegation that Christina admitted she did not notice any bruising when she changed E.J. on Saturday. Reading these facts in the light most favorable to Plaintiffs, it is reasonable to infer that E.J.'s bruising was the result of trauma that occurred after Christina last changed E.J.'s diaper on Saturday and before the bruising was noticed on Sunday.[5] These allegations do not remotely suggest the children

---

[5] It is important to point out that there are no allegations and no evidence regarding the amount of time it would take for bruising to appear on a 2-year old. In the absence of such information, it is reasonable to assume bruising would not take more than a couple of hours to appear on E.J..

were in imminent danger from Gavin.  Given the lack of imminent danger and absence of a court order, Plaintiffs have alleged a violation of the right to familial association.

Defendants nevertheless appear to dispute that the imminent-harm standard applies to Plaintiffs' First and Fourteenth Amendment claims.  Instead, Defendants contend the FAC must plead conduct that "shocks the conscience" or "offends the community's sense of fair play and decency."  (*MTD* [Doc. 5-1] 12:1–7; 13:15–14:1; *Reply* [Doc. 13] 5:1–14.)  Defendants are incorrect.

Although the shocks-the-conscience standard generally applies to Fourteenth Amendment claims, in the context of child-removal cases the Ninth Circuit uses the imminent-harm standard discussed in Wallis.[6]  See Keates, 883 F.3d at 1236.  For example, in Mueller v. Auker, 700 F.3d 1180 (9th Cir. 2012), the Ninth Circuit applied an imminent-harm analysis in analyzing the parents' Fourteenth Amendment claim based on the defendant officer's temporary removal of their child to secure medical tests and treatment.  See also James v. Rowlands, 606 F.3d 646, 653 (9th Cir. 2010) ("the Fourteenth Amendment's protection of parental rights prohibits the state from separating parents from their children 'without due process of law except in an emergency'").

_____

[6] Consistent with this observation, none of the cases Defendants cite in support of their contention that the shocks-the-conscience standard applies involve a claim for the unlawful removal or separation of children from their parents.  See Lassiter v. Dep't of Soc. Servs., 452 U.S. 18 (1981) (claim based on alleged failure to appoint counsel for indigent parents in proceeding to terminate parental status); Bryan County v. Brown, 520 U.S. 397 (1997) (arrestee's claim based on forcible removal from car after being stopped); Farmer v. Brennan, 511 U.S. 825 (1994) (transsexual prisoner's claim against prison officials for placing plaintiff in general population); Rochin v. California, 342 U.S. 165 (1952) (claim against officers for illegally breaking into criminal defendant's apartment and forcibly extracting contents of his stomach);  Rosenbaum v. Washoe County, 663 F.3d 1071, 1079 (9th Cir. 2011) (claim that officers violated right to familial association by handcuffing and arresting father in front of his children and then making inappropriate comments); Tamas v. Department of Social & Health Services, 630 F.3d 833 (9th Cir. 2010) (claim against county for giving license to abusive foster parents and failing to protect foster children from abuse); Kennedy v. City of Ridgefield, 439 F.3d 1055 (9th Cir. 2009) (claim arising out of shooting incident); and Richardson v. Idaho Dep't of Health & Welfare, 2015 WL 7295443 (D. Idaho 2015) (claim against social workers for failure to protect child from foster parents).

10

Moreover, even if the Court were to apply the shocks-the-conscience standard, Plaintiffs satisfy this standard. As set forth above, based on the FAC's allegations, the social worker Defendants had no basis to separate Gavin from his children. Separating a parent from his/her young children without any reasonable basis shocks the conscience.[7]

## 2. Was the law clearly established at the time of the interference?

Defendants next argue that even if Plaintiffs' constitutional rights were violated, the law was not clearly established at the time of Defendants' conduct. According to Defendants, when the alleged violation occurred, there was "no binding authority that a social worker's preparation of a safety plan that recommends a parent retain custody and seek a temporary custody order from a family court violates the Fourth, Fourteenth, or First Amendment rights." (*MTD* 14:17–20.)

"[A] defendant cannot be said to have violated a clearly established right unless the right's contours were sufficiently definite that any reasonable official in the defendant's shoes would have understood that he was violating it." Plumhoff v. Rickard, 134 S.Ct. 2012, 2023 (2014). However, "[t]his is not to say that an official action is protected by qualified immunity unless the very action in question has previously been held unlawful, but it is to say that in the light of preexisting law the unlawfulness must be apparent." Anderson, 483 U.S. at 640. In determining whether a right is clearly established, courts "may look at unpublished decisions and the law of other circuits, in addition to Ninth Circuit precedent." Prison Legal News v. Lehman, 397 F.3d 692, 702 (9th Cir. 2005);

---

[7] Defendants also argue E.J. and W.J. have failed to assert a Fourth Amendment claim because they were not seized. (*MTD* 9:9–24.) The Court need not decide the issue at this time. In the context of a motion to dismiss based on qualified immunity, the motion must be denied if the "operative complaint 'contains even one allegation of a harmful act that would constitute a violation of a clearly established right." Keates v. Koile, 883 F.3d 1228, 1235 (9th Cir. 2018). Because the Court finds the FAC alleges a violation of Plaintiffs' First and Fourteenth Amendment right to familial association, "plaintiffs are 'entitled to go forward' with their claims." Id.

11

Sorrels v. McKee, 290 F.3d 965, 970 (9th Cir. 2002) (looking to "decisions of our sister Circuits, district courts, and state courts" in evaluating if law was clearly established).

Here, Defendants' argument is premised on the contention that they only *recommended* Christina take full custody over the children. But the FAC alleges the social worker Defendants' Safety Plan was intended to immediately give full custody to Christina, and limit Gavin to only supervised visits with his children. (*FAC* ¶¶ 25, 27.) The FAC also alleges that after the Safety Plan was prepared, "Jennings called Gavin and informed him of the decision to seize and detain the children in Christina's care without his consent." (*Id.* ¶ 28.) Jennings then allegedly "*instructed* Gavin that he was prohibited from picking up the children at the regularly scheduled time on Wednesday, March 22, 2017" and he "*ordered* that Gavin was not to have any unsupervised contact with the children." (*Id.*, emphasis added.) These allegations support the inference that the social worker Defendants did more than simply recommend Christina take full custody, and that they interfered with Gavin's custody rights. Because at the time of the interference Wallis had established the need for a court order or reasonable cause to believe the children were in imminent danger, the social worker Defendants are not entitled to qualified immunity.

### D. <u>Supervisor Liability.</u>

Defendants next argue that the FAC fails to state a claim against Defendant Leggett because the claim is "premised solely on his supervision of Jennings' conduct, rather than any direct involvement." (*MTD* 15:7–8.)

"Because vicarious liability is inapplicable to *Bivens* and § 1983 suits, a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Iqbal, 556 U.S. at 675. Thus, "a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution." Hydrick v. Hunter, 669 F.3d 937, 942 (9th Cir. 2012).

12

Here, the FAC alleges that "Jennings consulted with defendant Dennis Legget, who agreed to the said action of separating Gavin from [W.J.] and [E.J.], in advance." (*FAC* ¶ 29.) The FAC further alleges that Leggett "authorized the Safety Plan with the understanding that (1) it would go into effect immediately, (2) that no application for a protective custody warrant or juvenile dependency petition would be filed, and (3) that the Safety Plan would be presented to the Family Court." (*Id.* ¶ 28.)

The Court agrees that the FAC contains few allegations regarding Leggett's conduct. Nevertheless, based on those allegations, it is reasonable to infer that Leggett was aware of the circumstances and, despite the lack of a court order or reasonable cause to believe the children were in imminent danger, approved of and authorized the separation of Gavin from the children. Accordingly, the Court finds the FAC states a claim against Leggett.

### E.    The *Monell* Claim.

Defendants argue the <u>Monell</u> claim must be dismissed for two reasons. First, Defendants argue the claim should be dismissed because Plaintiffs failed to allege a constitutional violation. (*MTD* 16:14–22.) For the reasons discussed above, this argument lacks merit.

Second, Defendants argue Plaintiffs' <u>Monell</u> claim should be dismissed because they fail to "cite a formal policy nor do they sufficiently allege the existence of a long-standing practice or custom." (*MTD* 16:25–27.) According to Defendants, rather than cite a formal County policy, Plaintiffs "allege a list of general policies in a conclusory manner." (*MTD* 17:9–13.)

Under <u>Monell</u>, "[m]unicipalities, their agents, and their supervisory personnel may be held liable for deprivations of constitutional rights resulting from their formal policies or customs. <u>Id.</u> at 691-95. However, "[a] government entity may not be held liable under 42 U.S.C. § 1983, unless a policy, practice, or custom of the entity can be shown to be a moving force behind a violation of constitutional rights." <u>Dougherty v. City of Covina</u>,

13

654 F.3d 892, 900 (9th Cir. 2011) (citing <u>Monell</u>, 436 U.S. at 694). In <u>Dougherty</u>, the Ninth Circuit found the following <u>Monell</u> allegations insufficient:

> (1) "Defendant CITY's policies and/or customs caused the specific violations of Plaintiff's constitutional rights at issue in this case" and (2) "Defendant CITY's policies and/or customs were the moving force and/or affirmative link behind the violation of the Plaintiff's constitutional rights and injury, damage and/or harm caused thereby."

<u>Id.</u> 654 F.3d at 900.

In contrast to the allegations in <u>Daugherty</u>, the FAC's allegations regarding the County are far less formulaic and provide some specificity. According to the FAC, the County had the following policies, customs, or practices: (1) "separating children from their parents without first obtaining a protective custody warrant in the absence of exigent circumstances;" and (2) "[s]eparating children from their parent, without a court order, if the parent does not sign a Safety Plan that he does not agree with." (*FAC* ¶ 55.) Given the posture of this case, the Court must accept these allegations as true. Accordingly, the Court finds Plaintiffs have adequately alleged a <u>Monell</u> claim against the County.

## IV. CONCLUSION & ORDER

 For the foregoing reasons, the Court **DENIES** Defendants' motion [Doc. 5].

**IT IS SO ORDERED.**

Dated: June 7, 2019

Hon. Thomas J. Whelan
United States District Judge

18-cv-2729 W (LL)